IMAR MORTGAGE CORPORATION, Appellant, *v.* TICOLI REALTY CORPORATION and Others, Defendants, Impleaded with STETSON REALTY CORPORATION, Respondent.

First Department, June 24, 1931.

*Alexander Pfeiffer* of counsel [*Joseph Lotterman* with him on the brief; *Gold & Maran*, attorneys], for the appellant.

*David S. Elgot*, for the respondent.

O'MALLEY, J.   The complaint in usual form seeks a foreclosure of first and second mortgages on unimproved property in the county of Bronx, New York city, in the principal sums of $20,000 and $10,000 respectively.  The defendant, respondent, Stetson Realty Corporation was the holder of a third and purchase-money mortgage on such property in the sum of $37,500.   This defendant has interposed a general denial, and, in addition, five affirmative defenses, the last two of which are also urged as counterclaims.

The first defense is to the effect that the mortgages mentioned in the complaint have been paid by other corporate defendants, or someone acting in their behalf, and that, therefore, the obligation of the defendant Stetson Realty Corporation has been discharged.

The second defense alleges that assignments of the two mortgages mentioned in the complaint were pretended assignments merely and were in fact assignments for the benefit and interests of the defendants Mere Holding Corporation and Golran Realty Corporation, which corporations, it is asserted, are mere fictions for the stockholders, officers and directors of the plaintiff, whose interests in such corporations are personal and identical.   This defense is further to the effect that the said assignments constituted and were *intended* to be a merger of interests so that the defendant Stetson Realty Corporation's liability under the breach mentioned in the complaint was discharged.

The third defense is to the effect that the pretended assignments to the plaintiff of the mortgages sued upon were without consideration paid by it and that it is not the real party in interest.

The fourth defense, also urged by way of counterclaim, alleges an unlawful and fraudulent conspiracy between the defendants Golran Realty Corporation, Mere Holding Corporation, the plaintiff and the defendant Ticoli Realty Corporation, whereby they unlawfully and fraudulently conspired to make and did make a pretended conveyance of the premises to the Ticoli Realty Corporation, for the purpose of pretending that the title to the fee of the property was in a third party not identified or associated with the plaintiff and the defendant Mere Holding Corporation. The counterclaim seeks to have the deed from the defendant Ticoli Realty Corporation declared void.

The fifth defense and counterclaim sets up a cause of action for the foreclosure of the third mortgage held by the respondent Stetson Realty Corporation.

The court at Special Term took the view that the plaintiff was not the real party in interest; that the mortgages sued upon in the complaint had been paid by the party who should have paid them, namely, the fee owner; and that there had been a complete merger of the mortgage liens with the fee so that the respondent's third mortgage had become the first lien. Accordingly the complaint was dismissed and judgment on defendant's counterclaims granted in all respects.

While it must be conceded that the defendant, respondent, Stetson Realty Corporation, is in an unfortunate position, we are unable to find as a matter of fact or of law that there has been a merger of the two mortgages mentioned in the complaint with the fee. From a practical standpoint the respondent is in no worse position than if title to these mortgages remained in the original holders.

The corporations and individuals whose acts are now to be considered are the following: The defendant Mere Holding Corporation and Golran Realty Corporation have Ely Maran as president. Imar Mortgage Corporation, the plaintiff, has Ely Maran as secretary and treasurer. Ticoli Realty Corporation, another defendant, is evidently an office corporation for one Gottlieb, an attorney, who has done legal work for Ely Maran. The defendant, respondent, Stetson Realty Corporation had been the owner of the premises on which all three mortgages were liens.

On April 25, 1928, Mere Holding Corporation, as purchaser, entered into a contract with one Naclerio, as seller of the premises in question. The purchase price was $95,000, payable, $10,000 on signing of the contract, $17,500 upon delivery of the deed, $20,000 by the purchaser taking title subject to a first mortgage in that amount, then a first lien on the premises and due and payable

March 28, 1929, $10,000 by the purchaser taking title subject to a mortgage in such amount, then a second lien on the premises, also becoming due March 28, 1929, and $37,500 payable by the purchaser or its assigns executing and delivering a purchase-money bond and mortgage in such sum.

Naclerio did not have title to the property, but did have a contract for its purchase, previously entered into with the defendant Stetson Realty Corporation.

On the law day, June 28, 1928, the defendant Stetson Realty Corporation conveyed the premises to the Mere Holding Corporation, the deed reciting that such conveyance was " *subject* to a mortgage of $20,000 now a lien against said premises; and *subject* to a further mortgage of $10,000, now a lien against said premises," and that it was further " *subject* to a purchase money mortgage of $37,500, to be executed simultaneously herewith." On the same day, Mere Holding Corporation executed the purchase-money bond and mortgage, foreclosure of which has been decreed, which also was made expressly subject and subordinate to the first and second mortgages already mentioned. The purchase-money mortgage was executed by Jacob Maran, as vice-president of the Mere Holding Company, a brother of Ely Maran, and an attorney. The principal of this bond and mortgage was to be paid December 28, 1929.

The money required for the purchase of the property was furnished by the Golran Realty Corporation and on the same date, June 28, 1928, Mere Holding Corporation conveyed the premises to the Golran Realty Corporation, such transfer again being " *subject* to the present mortgage and accrued interest." Up to this time, *i. e.*, the date of this conveyance, the validity of these three mortgages is conceded.

Prior to the maturity of the principal amount of the first and second mortgages, the Golran Realty Corporation sought an extension of time and payment from the holders thereof, but such was refused. Assignments of these mortgages from the holders to the Imar Mortgage Corporation were then procured and it is not disputed that the sum of $32,000 in cash was paid for such assignments. The plaintiff, upon the trial, introduced evidence to the effect that the Golran Realty Corporation had loaned this amount to the Imar Mortgage Corporation, and that such was a *bona fide* transaction between the separate corporate entities. For the purposes of this appeal, however, we may assume, as does the appellant in its brief, that the transaction was not a loan and that the funds were actually paid by the Golran Realty Corporation to the assignors, the assignments being taken by the Imar Mort-

gage Corporation, plaintiff herein, as the mere nominee of the said Golran Realty Corporation.

Thereafter and on or about October 21, 1929, the Golran Realty Corporation conveyed the premises to the Ticoli Realty Corporation. Admittedly no consideration was paid therefor. Whatever the real reason for this conveyance, it is not important, for again we shall assume for the purposes of this appeal, as does the appellant, that the conveyance may be considered as not having been made.

Admittedly there were defaults on the first and second mortgages, and their non-payment, save by the alleged merger, is not disputed by the defendant, respondent, Stetson Realty Corporation.

It is true that there undoubtedly exists a close connection between the corporations which became the owners of the equity after its purchase from Naclerio, and those corporations participating in the assignments of the mortgages sought to be foreclosed by the plaintiff. However, assuming as already noted, that the Golran Realty Corporation, then being the grantee and owner of the equity of redemption, took an assignment from the then holders of the first and second mortgages in question, there did not thereby result, as a matter of law, a merger in the fee so that the mortgages became extinguished. The Golran Realty Corporation was not personally and primarily liable for the payment of the obligations evidenced and collateraled by these mortgages. It, as well as the Mere Holding Corporation, had taken title, not by assuming such obligations, but by taking ownership subject thereto. The premises were the primary fund for the payment of the debt, and the purchaser was not personally liable, particularly as the amounts of such mortgages formed part of the consideration, and were deducted from the purchase price. (1 Wiltsie Mort. Forec. [4th ed.] § 235, p. 323; *Belmont* v. *Coman*, 22 N. Y. 438; *Equitable Life Assurance Society* v. *Bostwick*, 100 id. 628.) The question of merger under such circumstances is one of intent. The rule is well stated in 2 Pomeroy's Equity Jurisprudence (4th ed., § 798, p. 1630), as follows: " On the other hand, when an owner of the premises who is not personally and primarily liable to pay the debt secured pays off a mortgage or other charge upon it, he *may* keep the lien alive as a security for himself against other encumbrances or titles, and thus prevent a merger. Whether he does so is a question of intention, governed by the rules laid down in the previous paragraphs. When it is evidently for his benefit, the intention will be presumed. He may thus be entitled to preserve the lien, even without a formal assignment of the security to himself." (See, also, *Monica Realty Corp.* v. *Bleecker*, 229 App. Div. 184.)

Plaintiff's contention that no such merger was ever intended is

thoroughly substantiated by the evidence, and more particularly by the method in which the assignments were handled. If merger had been desired, title to the mortgages and the equity could easily have been placed in the same person and the mortgages discharged of record.

Though, as already stated, there exists a close connection between all corporations through which the plaintiff claims title, we find no cause for disregarding the corporate entity save in the assumptions above pointed out, which assumptions, however, we do not find as matters of fact.

There is here found no fraud, no evidence of an unlawful conspiracy. Viewing the evidence in its most favorable aspect from respondent's viewpoint it tended to show merely an effort to do a legal act, namely, to acquire the first and second mortgages, without, however, effecting a merger of them with the fee. This was a lawful end and might have been effected by individuals without the intervention of corporate entities. It did not become illegal merely because of their use. A common method of handling real estate transactions was adopted. Furthermore, corporations may in some instances be organized to lawfully and legally do that which the incorporators themselves may not legally and lawfully do. (*Jenkins* v. *Moyse*, 254 N. Y. 319.) There being no fraud or illegality in the case before us, the corporate entities may not be disregarded.

It follows, therefore, that the judgment appealed from should be reversed, with costs, and judgment granted in favor of the plaintiff, with costs.

FINCH, P. J., McAvoy, MARTIN and TOWNLEY, JJ., concur.

Judgment reversed, with costs, and judgment granted in favor of the plaintiff, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.