CITIZENS NATIONAL BANK OF WINTERSET, Appellee, v. S. E. ROWE et al., Appellants.

No. 41160.

JUNE 24, 1932.

H. C. & H. C. Taylor and W. T. Guiher, for appellants.

Percival & Wilkinson, for appellee.

GRIMM, J.—On January 1, 1928, L. A. Conway owned 346 acres in Grant River Township, Madison County, Iowa, which was encumbered by a first mortgage of $26,000.00. At the same time, Conway and his wife owed the Citizens National Bank of Winterset, Iowa (plaintiff-appellee), about $22,000.00, secured by a second mortgage on said land, and also a chattel mortgage on all of the personal property of Conway. The holder of the first mortgage, the American Commercial and Savings Bank of Davenport, Iowa, foreclosed May 28, 1928, and the land was sold under special execution for $28,000.00 and bought in by the American Commercial & Savings Bank, July 14, 1928, leaving a deficiency against Conway and wife of over $2,000.00. Thereafter, plaintiff foreclosed its chattel mortgage against Conway and sold all of his personal property and thereby reduced its indebtedness against Conway to about $17,000.00. Under these circumstances, Conway owed the plaintiff more than $17,-000.00, which was not secured.

It appears that the plaintiff bank had already charged off about half of the amount due from Conway, but more than $9,000.00 of the claim was still carried in the assets of the bank.

During the year of redemption on the said Davenport bank foreclosure, the defendant Conway testifies, in substance, to the effect that he had a conversation with Mr. Cornell, then the cashier of the plaintiff bank, in which Cornell told Conway that the bank had a right of redemption and so did Conway, and that the bank wanted Conway to redeem. Other conversations followed, and finally, Conway told Cornell he could do nothing towards redemption, whereupon Cornell, speaking for the bank,

asked Conway to assign to the bank his right of redemption, and this was done. Further conversation followed, in which Conway expressed the wish to remain on the place and Cornell expressed willingness to endeavor to help him do so.

After the sheriff's deed had been delivered to the Davenport bank, Cornell advised Conway that arrangements had been made to buy the land back, but that the Davenport Bank would not give title to Conway; that it would be necessary to get someone else to take title and make application for a loan. In this connection, it may be noted that the McCall Land & Loan Company of Winterset was the local agent of the Davenport bank.

In the conversation between Cornell and Conway, young Bob Cornell, son of the cashier, was suggested as a party to take title, but the cashier refused to accede to this. It then was suggested that Conway get his brother-in-law, Mr. S. E. Rowe (one of the defendant-appellants); to take the title and make an application for a loan. Conway wrote Rowe to that effect.

It appears that the Davenport bank agreed to sell the 346 acres of land and certain rental notes for $26,000.00, of which $6,000.00 was to be cash and the balance was to be represented by a first mortgage on the land. The Davenport Bank specified, however, that it would not accept a mortgage signed by Conway. The title was then passed to Rowe, and Rowe and his wife executed two mortgages on the land, one for $20,000.00 to the American Commercial & Savings Bank of Davenport and $5,000.00 to the McCall Land & Loan Company. The plaintiff bank paid the McCall Land & Loan Company $6,000.00 for the $5,000.00 note and mortgage in suit and the 1929 rent notes. Thereafter, the land was deeded by Rowe to Conway.

This suit was brought on the $5,000.00 note and to foreclose the mortgage securing the payment thereof.

As previously noted, the trial court found for the plaintiff and against the defendants, and the defendants appeal.

I. Many questions are raised and argued by the appellants, but the principal contention and battle ground of the suit is whether the Rowes were accommodation signers for the plaintiff bank or for the defendant Conway.

Manifestly, the maker of an accommodation note, who is the accommodating party, is not liable to the party accommo-

718

dated. State Savings Bank of Woden v. Markworth, 203 Iowa 461, and cases cited.

Did Rowe become an accommodation signer for the benefit of the plaintiff bank, or for the benefit of Conway? The evidence on the subject is much in dispute. We will not undertake to quote from it at any great length, but will refer to parts of the evidence which, when taken with other evidence, seem to us quite conclusive on the question. The defendant Conway, on cross-examination, said:

"Q. And you told him [Cornell] you did want it fixed up some way so that you could keep the farm? A. Yes, sir. Q. Did you ask him to help you work out some plan whereby you could keep the farm? A. We talked that way. Q. And you wanted Mr. Cornell to work out some plan whereby you could keep that farm, instead of losing it, didn't you? A. Yes, sir. I had lived on that farm all my life. It was my father's farm. I am 63 years old. After the year of redemption was up Mr. Cornell and I still talked about getting the farm. Q. You and Mr. Cornell still talked of how you could redeem the farm? A. We always talked about it. Q. You told Mr. Cornell you wanted to work out some plan whereby you could get the farm back? A. Yes, sir. Q. After the deed had been executed by the sheriff to the Davenport bank you asked Mr. Cornell if he couldn't help you get the farm back again, didn't you? A. I have asked him. Q. You wanted that farm back again? A. Yes, sir. Q. It was your intention to get that farm back if you could work out some plan whereby it could be financed? A. Yes, sir. Q. That was your intention, wasn't it? A. Yes, sir. Q. And in order to carry out this plan whereby you could again become the owner of this land Mr. Cornell told you the Davenport Bank did not want to loan you the money but wanted it in someone else's name? A. Yes, sir. Q. And you asked Mr. Cornell if his son could take title to the land? A. Yes, sir. Q. And Mr. Cornell said he didn't want his son to do that and asked if your brother-in-law could help you out? A. Yes, sir. Q. And in order to get him to help you out, in order for you to get this land back again, you wrote to your brother-in-law, S. E. Rowe? A. Yes, sir. Q. And you asked Mr. Rowe if he would help you get the land back? A. Only to use his name.

Q. For the purpose of getting the land back to you? That was the purpose, wasn't it? A. Yes, sir. Q. Mr. Rowe wrote back to you? A. Yes, sir. Q. In' that letter Mr. Rowe told you in order to help you get the farm back he was willing to sign the papers? A. Yes, sir. . Mr. Rowe's wife is my sister. Q. When you wrote to Mr. Rowe did you tell him that the Davenport Bank would not give you the deed to the land, but would have to give it to some other party? A. No, sir, not exactly that way. Q. Tell me as near as you can what you wrote to Mr. Rowe. A. I told him we were closed out and were trying to make a loan and get ahold of the land again, but I would have to use somebody else's name and asked him to use his name. Q. What did he write? A. He wrote back that he would do what he could to help me out of the hole but he would not become liable. Q. Now this whole transaction was for the purpose of helping you to become the owner of that land again, wasn't it? A. Yes, sir.''

Mr. S. E. Rowe, on cross-examination, says, in speaking of signing the note in controversy:

''Q. You would not have done it for the benefit of the bank, except for Mr. Conway? A. I would not have done it for the benefit of the bank.''

There is evidence in the record tending to contradict this cross-examination.

Mr. Rowe, during all of that time, was cashier of a bank at Bloomfield, Iowa. Mrs. Rowe is a sister of the defendant Conway. She and Conway had been raised on the farm in question.

Without attempting to quote or even refer to much of the evidence, all of which has been very carefully examined, we reach the conclusion on the whole record that the Rowes signed the note in question as accommodation signers, accommodating Conway, and therefore the defense that Rowe was an accommodation signer for the plaintiff bank has not been sustained.

II. It is the contention of the appellant that Rowe's agreement to sign the note in question was conditioned upon his not assuming any liability in relation thereto, that said note and mortgage were procured by fraud, and that the appellee bank is estopped from maintaining the cause of action.

Proper and timely objections were made to all of the testimony on the subject.

At the outset of the consideration of this question, it will be noted that there is here no contention that there was a conditional delivery of the instrument. Testimony was offered to show that when Rowe signed the note it was with an oral agreement that he was not to be liable thereon. On a similar question, this court said, in Klemm v. Weil, 194 Iowa 1073, l. c. 1075:

"The alleged false representation to the effect that the defendant need never pay the note was not a representation at all, in a legal sense. It was an oral contemporaneous promise, and was as contradictory to the written undertaking of the note as it was possible to make it. Lerch v. Sioux City Times Co., 91 Iowa 750; State Bank v. Brown, 142 Iowa 190, 196. If there were other evidence of fraud, the making of such promise could be considered on the question of fraud; but it does not, of itself, constitute a representation, either fraudulent or otherwise."

See also Smith v. Breeding, 196 Iowa 670, l. c. 672; International Stock Food Co. v. Beshey, 200 Iowa 165, l. c. 169; Mechanics Savings Bank v. Gish, 200 Iowa 463, l. c. 475; Davenport v. Mullins, 200 Iowa 836; Hills Savings Bank v. Hirt, 204 Iowa 940, l. c. 947; Versteeg v. Hoeven, 214 Iowa 92.

Under the doctrine announced in the foregoing case, the defendants Rowe will not be permitted to testify that under the facts and circumstances in this case, the Rowes were not to assume any liability on the note by signing it.

The foregoing is determinative of all of the questions raised and argued by the appellants.

It follows that the trial court correctly ruled and the cause must be, and is,—Affirmed.

All justices concur.