MINNEHAHA LAND & INVESTMENT COMPANY, Respondent, v. CONSOLIDATED SAND & STONE COMPANY, et al, Appellants.

(264 N. W. 198.)

(File No. 7812. Opinion filed December 21, 1935.)

*T. R. Johnson* and *Doyle & Mahoney*, all of Sioux Falls, for Appellants.

*Ernest Raley*, of Sioux Falls, for Respondent.

RUDOLPH, J. The facts in this case are stipulated. One G. K. Groth was the owner of certain lands in Minnehaha county. Delbert Wheeler and his wife, Eva Wheeler, were copartners in the sand and gravel business operating under the name of Sioux Falls Sand Company. On March 10, 1920, Groth and the Wheelers entered into an agreement for the purpose of allowing the Wheelers to move sand and gravel from the land owned by Groth for a period of twenty years. The agreement contained the provision as follows:

"It is further agreed that second party may use land for the purposes aforesaid, may remove the surface of said land as may be

necessary and dump and leave the surface dirt that it may be necessary to remove at such place or places on said land, or on adjoining land owned by the party of the first part as first party may direct so long as the hauling shall not exceed one thousand feet; second parties may excavate to any depth and remove and dispose of sand and gravel from said land, but the same is leased to second parties for no other purposes, it being understood that the party of the first part shall have the right to use any portion of said land at any time, that is not used by the parties of the second part for the purposes covered by this lease.

"In consideration of the foregoing the parties of the second part agree to pay to the party of the first part the sum of four (4) cents per ton for all sand or gravel taken or removed from said land, such payments to be made for each calendar month on or before the 15th day of the month following, at which time the parties of the second part agree to submit a complete statement showing the number of tons of sand and gravel taken from said land and to whom and to what place shipped or sold; second parties also agree that first party shall have access to their shipping and sales records and also consent that first party may inspect the records of the Railroad Company to ascertain the amount of material shipped under this agreement. Second parties further agree on or before the 15th day of March of each year to pay to party of the first part any sum that may be necessary to bring the total payments for the year ending March first preceding, up to the sum of Two Thousand ($2,000.00) Dollars, it being the intention of the parties hereto that second parties guarantee, and they do hereby guarantee that the annual rental for the use of said land shall amount to at least Two Thousand ($2,000.00) Dollars."

On the 18th day of September, 1923, a further agreement was entered into between Groth and the Wheelers, wherein the first agreement was modified by language as follows:

"And whereas, it now appears that the parties of the second part will not be able to continue in business and pay the sum of Two Thousand Dollars ($2,000) as a minimum, guaranteed in said contract and whereas the party of the first part desires that the parties of the second part shall continue to operate the business under said former agreement;

"Therefore, it is hereby stipulated and agreed between the parties that the parties of the second part shall continue in possession of said property and continue to operate the business provided for in said foregoing agreement, and that the party of the first part will accept for the year ending March 1, 1923, the sum of Four Hundred Ninety-Four Dollars and Seventy-five Cents ($494.75) in lieu of the amount payable under said original contract, which sum of $494.75 has been this day paid, the receipt whereof is hereby acknowledged by the party of the first part; for the year ending March 1, 1924, and for each subsequent year during the life of said original contract, the party of the first part will accept the sum of One Thousand Dollars ($1,000) in lieu of the Two Thousand Dollars ($2,000) guaranteed as a minimum in said original contract. But it is understood that second parties shall pay for the year ending March 1, 1924, and each subsequent year the four cents per ton provided for in said original contract."

On May 31, 1924, Groth sold and assigned to the plaintiff all his rights under Exhibit A and B. On January 18, 1924, Eva Wheeler died, and the assets and affairs of the partnership, including the operation of the sand and gravel pit on the Groth place, were taken over by the Sioux Falls Sand Company, a corporation, which assumed and agreed to pay all the obligations of the partnership. On March 1, 1927, the corporation, Sioux Falls Sand Company, sold and transferred to the Consolidated Sand & Stone Company, a corporation, all of its assets, including the contracts with Groth, and thereafter the Consolidated Sand & Stone Company operated the gravel pit. The Consolidated Sand & Stone Company assumed and agreed to pay all obligations of the corporation, Sioux Falls Sand Company. Certain payments were made to Groth and the plaintiff by those operating the gravel pit on the Groth premises and the principal question here presented is the proper application of these payments.

During the years ending March 1, 1921, March 1, 1922, and March 1, 1923, there was not a sufficient amount of gravel taken from the premises when paid for at the rate of four cents per ton to amount to the yearly minimum provided for in the agreements However, during these years the yearly minimum was paid. Each year following March 1, 1923, the yearly minimum was exceeded

by the amount of gravel taken from the premises when figured at the rate of four cents per ton. During these later years the payments made were not sufficient to pay for the gravel actually taken, and this action was commenced to recover the difference between the payments actually made for these years following 1923, and the amount of gravel actually taken during these years figured at the rate of four cents per ton. The trial court allowed a recovery and the defendants have appealed.

It is appellant's contention that the defendants, having paid (for the purpose of making up the yearly minimum) during the first three years of the life of the agreement an amount in excess of four cents per ton on the actual amount of sand and gravel removed from the premises, had the right to remove thereafter the number of tons of gravel which at four cents per ton would equal the amount of the excess paid during the first three years of the lease. In other words, defendants contend, if payments made at the rate of four cents per ton over the period of years that the gravel pit was operated would be sufficient to total the yearly minimum provided for in the agreement and would also be sufficient to pay for the gravel actually taken out over the entire period at the rate of four cents per ton, that then there would be no further obligation on behalf of the defendants, even though during some of these years an amount of gravel sufficient to make up the yearly minimum provided for in the agreement was not actually taken from the land. The trial court construed the agreement to provide for a yearly cut-off and held that, if the gravel taken from the pit and paid for at the rate of four cents per ton in any one year did not amount to a sum sufficient to pay that year's yearly minimum as provided in the agreement, then the defendants became obligated to pay to the plaintiff the deficiency for that year, and that the payment of the deficiency for any one year did not give the right to remove the number of tons of gravel which at four cents per ton would equal the amount paid as a deficiency payment.

We are convinced that the trial court's construction of the agreement is correct. The intention of the parties as evidenced by the terms of the agreement is, in our opinion, in accord with this construction and it is this intention that must govern the result

reached in this case. It seems clear that it was the contemplation of the parties that the minimum payment provided for in the agreement should be paid for the privilege of removing gravel during that year, to be paid by way of rent for the premises for that particular year. The agreement, itself, refers to this minimum payment as an "annual rental." There is no express provision in the agreement which contemplates that the deficiency payment for any one year could be recouped in subsequent years by taking gravel in excess of the fixed minimum, and we find no language from which such agreement might be implied. The agreement expressly provided for an accounting to be made in March of each year, and, if the payments made over the course of the preceding twelve months did not amount to the minimum which was provided, the deficiency should then be paid. It therefore appears, we believe that each year was to be considered separate and apart from any other year. The Pennsylvania court in the case of Woodruff v. Gunton, 222 Pa. 384, 71 A. 851, 853, had before it an agreement very similar in its terms to that here involved, and in commenting thereon that court said: "The payment of the royalty or rental for each year is independent of the payment in any other year, and the mining of the coal each year is independent of the mining in any other year. With the intention of the parties thus clearly expressed, it is impossible to attribute a different one to them * * * without reading into the lease a clause providing that the lessee may apply to the deficiency * * * the payments made in subsequent years for coal mined in excess of 24,000 tons." So in this case it seems to us that the minimum rental provided in the agreement for each year is made independent of the payments made in any other year. Appellants have cited cases which they maintain support their contention. However, an examination of these cases and the agreements there involved fail to convince us that they should control our construction of this present agreement. In some of the cases cited it is expressly provided in the agreement there under consideration that the lessee may recoup himself after paying the minimum by mining the deficiency in a subsequent year without payment therefor, in other of the cases cited the right of recoupment is implied from other language found in the agreements which is not present here. We think it clear that under the terms

of this agreement it was the intent that each year should be taken by itself, and that the minimum payment provided was for the privilege to take during that year the amount of sand and gravel which, when figured at four cents per ton, would amount to the fixed minimum. However, if that privilege was not exercised, there is nothing in this agreement which would permit the defendants in subsequent years to remove sand and gravel to the amount of the deficiency payment made for the preceding year.

■ Counsel for appellant suggests in his brief and argued somewhat at length in oral argument that the judgment against the appellant, Wheeler, cannot be sustained because the plaintiff had consented to a novation and accepted the Sioux Falls Sand Company and the Consolidated Sand & Stone Company, corporations, as creditors in place of Wheeler, also that the defendant, Consolidated Sand & Stone Company, cannot be held for any sand or gravel removed by the Sioux Falls Sand Company or Wheeler. We have carefully examined the specifications of error presented to the lower court and the assignments of error filed herein, and find nothing either in the specifications or assignments which would justify us in reviewing the court's holding that all parties defendant hereto are equally liable. The specifications and assignments go only to the general question of liability, and attempt to make no distinction between the liability of these defendants. This court has consistently held that questions which should have been raised in the court below will not be first considered upon appeal. See Johnson v. Fidelity & Deposit Co. of Maryland, 61 S. D. 207, 247 N. W. 794, and cases therein cited.

The judgment and order appealed from are affirmed.

All the Judges concur.