PATRICK, et al, Respondents, v. BLAKE,
State Secretary of Finance etc., Appellant

(19 N. W.2d 220.)

(File No. 8741.   Opinion filed June 18, 1945.)

George T. Mickelson, Atty. Gen., and E. D. Barron, Asst. Atty. Gen., for Appellant.

Louis H. Smith, of Sioux Falls, for Respondents.

BECK, Circuit Judge. This appeal involves the Soldiers' and Sailors' Memorial Building built at Pierre, in 1931 and 1932.

The Sixteenth Session of the South Dakota Legislature passed Chapter 323 of the 1919 Session Laws. Section 1 of this Act reads as follows: "Section 1. Permission is hereby granted to erect upon the Capitol grounds at Pierre a suitable

Memorial to the Soldiers and Sailors of South Dakota who served in the war of the United States against Germany and Austria, and especially for those who made the supreme sacrifice and laid down their lives for those ideals which actuated us in engaging in this great struggle, which terminated so gloriously and victoriously through the efforts and sacrifices of these noble sons of South Dakota, and of their gallant comrades-in-arms. Such Memorial shall be financed by popular subscription and erected without expense to the State of South Dakota, the title to and control of such Memorial shall be vested in the State of South Dakota."

By Section 2 of this Act the Governor, Adjutant General and the Secretary of the Department of History were constituted a committee to select the site, raise the necessary funds, and arrange for and supervise the construction of the Memorial, but with the strict injunction not to involve the state in any debt or other obligation therefor. Section 3 provided that all building contracts be let to the lowest bidder after specified notice was given. Section 4 constituted the Secretary of State, the State Auditor and the State Treasurer a board of auditors to audit all accounts.

The committee, provided for by such statute, assumed the duties enjoined upon them. They held meetings from time to time and kept a record of their proceedings. Such committee raised the necessary funds, arranged for the construction of the Memorial, chose the form of such Memorial and, in every respect, executed the mandate contained in said statute.

A vigorous campaign was waged to secure the necessary funds by popular subscription. In furtherance of this campaign, advertising matter was widely circulated throughout the state bearing the names of the Governor and other members of the committee. Such advertisements contained some rather extravagant language. It was stated therein: "Living Memorial In the form of a classic building, to be the best product of American Architecture and built in a manner to endure for many centuries. * * * A memorial that will be as enduring as rock, and concrete, and steel can

be; as beautiful as the most entrancing dream; as pure as the patriotism of our sons in whose honor it is erected. A Memorial in Every Way. Let us build now A Temple to loyalty that our posterity a thousand years hence, will look upon with awe and veneration and say, 'our sires of old were men of vision, who recognized heroism and appreciated strength and beauty. They built for Eternity.' "

A large part of the necessary funds were raised by popular subscription. By Chapter 41 of the Session Laws of the 1920 Special Session of the Legislature, counties were authorized to contribute to the State Memorial Fund in amounts not to exceed one-tenth of one mill upon each dollar of the assessed valuation of such county. Under this statute various amounts were contributed to the fund.

By Chapter 271 of the 1923 Session Laws of South Dakota, the State Treasurer was made custodian of the Soldiers' and Sailors' Memorial Fund and he was directed to preserve and invest the same, and to credit same to a special fund to be known as the Soldiers' and Sailors' Memorial Fund; and it was provided that all state depository bonds should apply to this fund.

A part of the fund was lost in closed banks while in the custody of the State Treasurer. By Chapter 47 of the 1931 Session Laws of South Dakota, $15,000 was appropriated for the completion of the Memorial Building. However, only so much of this fund was used as was required to replace the money lost in closed banks, and the balance was returned to the State Treasury.

The original plan was to build the Memorial on the Capitol grounds, but in February, 1930, the Chicago and Northwestern Railway Company tendered a deed to the state conveying a tract of land immediately across the street from the Capitol grounds to be used as a site for the Memorial Building. Such deed contained the following provisions: "This conveyance, however, is made upon the express condition that said above described premises shall be Forever used as and for a Soldiers Memorial Building to be erected thereon by said grantee and if at any time the said premises shall be used for any other purposes or if the said Soldiers

Memorial Building shall not have been erected on said premises by said grantee within ten (10) years from the date hereof title to the said premises shall revert to and revest in said grantor, its successors or assigns, without any declaration of forfeiture or other act on its or their parts to be performed."

The state accepted this deed and the conditional grant by the enactment of Chapter 235 of the 1931 Session Laws.

The committee created by the Act of 1919 were given full power to choose the form of the Memorial and to provide for its erection. The minutes of the committee show various plans were considered and rejected. Governor Gunderson at one time suggested the building of a joint Memorial and Office Building. This scheme too was disapproved. The American Legion submitted a plan whereby a Memorial Building was to be erected, especially designed as a Memorial. The Department of History was to be housed in the building, and the remaining space was to be used as a museum for the display of war relics and portraits, and for other purposes connected with and appropriate for a Soldiers' and Sailors' Memorial. The plan of the American Legion was adopted by the committee, and the plans and specifications for the building were drawn accordingly. The State Historical Society has occupied a part of the Memorial Building ever since its completion.

On March 19th, 1943, the appellant, as Director of Employment of South Dakota, purporting to act under the provisions of SDC 55.2702, made an order addressed to L. K. Fox, State Historian, directing him to vacate all of the rooms in the east part of the Memorial Building, on both the first and second floors and the north room of the basement. The order recited that the portion of the building, above mentioned, has been, by the Director of Employment, allocated to the State Free Library Commission. The State Historical Society was required to vacate said rooms by April 10th, 1943. The appellant threatened to enforce such order and was about to do so when this action was commenced in the Circuit Court of Hughes County for injunctive relief.

The trial court entered judgment restraining and enjoining the appellant, his agents, employees and successors

in office from placing or installing the State Free Library Commission, or its property, books, record, texts, documents, or employees in said Memorial Building. An appeal was perfected from such judgment and an order denying a new trial.

By appropriate assignment of errors, the appellant presents various alleged errors for our consideration.

■ Appellant, in his answer, avers that the respondents do not have sufficient interest in the subject matter of this action to qualify them to maintain such an action. This defense is referred to in appellant's statement of facts, contained in his brief, wherein he states his various contentions, but such defense is not presented, for our consideration, by any assignment of error nor is it argued in appellant's brief. Under this state of the record, such alleged defense will be deemed to have been waived, so far as this appeal is concerned, and cannot be considered by the court. State v. Steensland, 56 S. D. 534, 229 N.W. 395; Anderson v. Brule County, 67 S. D. 308, 292 N. W. 429; Parsons v. City of Sioux Falls, 65 S. D. 145, 272·N. W. 288; Goetz v. Gurney, 50 S. D. 337, 210 N. W. 155; Minnehaha Land & Investment Co. v. Consolidated Sand & Stone Co., 64 S. D. 48, 264 N. W. 198.

■ It is further contended by appellant that the trial court committed error in permitting the witness, Fox, to testify as to what type of library was referred to in the plans and specifications compiled for use in the construction of the Memorial Building. This evidence was incompetent, under the record, but the trial court is deemed to have disregarded incompetent or immaterial evidence. The alleged error is without prejudice. Clancy v. G. F. Buche Co., 53 S. D. 565, 221 N. W. 601; Knapp v. Brett, 54 S. D. 1, 222 N. W. 297; City of Wessington Springs v. Smith, 54 S. D. 515, 223 N. W. 723; Svang v. Clutterbuck, 59 S. D. 398, 240 N. W. 339.

There is sufficient competent evidence in the record to support the findings.

■ It is further claimed that there was no definite dedication of the Memorial Building to any specific purpose or use; that therefore the state may put such building to any

use that its officers deem proper for the use of a Memorial Building.

We are fully persuaded that the eloquent language incorporated in the statute authorizing the building of the Memorial, the language used in the literature and advertisement distributed over the state to stimulate donations to the building fund, the contributions made by various counties, the information reflected by the plans and specifications prepared by the architects who planned and supervised the building of the Memorial, the facts disclosed by the minutes of the committee, and the reservation in the deed from the Railway Company to the state, clearly establishes a dedication of the building in question as a Soldiers' and Sailors' Memorial, rather than an office building.

A dedication may be inferred from the acts and conduct of the parties concerned. Herrick v. Gregory et al., 46 S. D. 89, 190 N. W. 881; Evans et al. v. City of Brookings, 41 S. D. 225, 170 N. W. 133.

Appellant asserts that it is not inconsistent with, nor a violation of, such dedication to install the State Free Library Commission in such Memorial. This commission is an agency of the state; and is engaged in accumulating books, magazines and periodicals, and loaning them to high schools, civic societies and individuals. The commission maintains offices, store rooms and shipping facilities.

The Supreme Court of California in the case of Allied Architects' Association v. Payne, 192 Cal. 431, 221 P. 209, 210, 30 A. L. R. 1029, in commenting on the purpose of a Memorial uses the following language: "The continuity of our governmental institutions is dependent in a large measure upon the perpetuation of a patriotic impulse which is but the willingness to sacrifice all for the ideas and the ideals which form the foundation stones of our republic. It will not be gainsaid that patriotism is promoted by the erection of a memorial monument, be it granite shaft or building, symbolic of the soldiers' spirit of sacrifice, conceived and consummated in recognition of his deeds of heroic daring, and perpetuating in grateful remembrance those who dedicated their lives to the service of their country. Such a monument brings visibly and effectually before the minds

of the present. and future generations the sacrifices of the past."

■■ We are dealing with a dedication made by private citizens. A more strict rule prevails than in cases where a public corporation, such as a state, dedicates its own property to some specific public use. The weight of authority supports the view that if a private grant is accepted, it can be used only for the purpose to which it has been dedicated. City of Hopkinsville et al. v. Jarrett et al., 156 Ky. 777, 162 S. W. 85, 50 L. R. A., N. S., 465; Perry Public Library Ass'n et al. v. Lobsitz et al., 35 Okl. 576, 130 P. 919, 45 L. R. A., N. S., 368; State ex rel. Johnson v. City of Manhattan, 115 Kan. 794, 225 P. 85; Jones v. Mayor ,etc., City of Jackson, 104 Miss. 449, 61 So. 456; Matson v. Town of Caledonia et al., 200 Wis. 43, 227 N. W. 298, Note 18 A. L. R. 1247; and Note 63 A. L. R. 485.

■ It is further contended by appellant that the state had no authority to accept a restricted title to the Memorial site; that the reservation clause in the deed given by the Railway Company is void and therefore the state holds fee title to the Memorial and the land upon which it is situated.

Section 23, of Article III, of the State Constitution does not forbid legislation permitting the state to take title to trust property, dedicated to a public use.

Section 5066 of the 1919 Code, then in force, can have no application because the state did not furnish the money for the erection of the Memorial.

■ The general rule is stated in 59 C. J. 165, § 276, as follows: "There is a distinction between the control which the legislature may exercise over property held by a public corporation for public purposes and of property held by such corporations as trustee under private grant with restrictions imposed by the grant. In the former case the power of the legislature over the property is supreme; in the latter, it may prohibit the corporation from accepting the trust; but, when once accepted, the trust subject must be applied to the purposes to which it has been dedicated by the grantor."

The above rule is supported by ample authority. Note 10 A. L. R. 1388; 25 R. C. L. 389, § 23, People v. Brooks,

224 Mich., 45, 194 N. W. 602; Town of Winchester v. Cox, 129 Conn. 106, 26 A.2d 592.

By authorizing the construction of the Memorial Building and taking title thereto; and by accepting the conditional deed from the Railway Company, the state assumed the obligation of a voluntary trustee which, at least, imposes upon the state a moral obligation to keep the Memorial in repair and maintain the same.

We are of the further view that the appellant, neither as Secretary of Finance, nor in his official capacity as Director of Employment, had authority to make and enforce the order of March 19th, 1943, hereinbefore referred to. His powers are not unlimited. He could act only in the manner provided by law. SDC 55.2702, under which appellant claims to have acted, confers no authority upon him to transfer the State Free Library Commission from the State Capitol Building across the street to the Soldiers' and Sailors' Memorial Building. He was a mere ministerial officer and could exercise only such authority as was clearly conferred upon him by the Legislature. The Legislature has not attempted to make such transfer nor has it delegated, to any state officer or employee, the power to do so. We affirm what we said concerning the powers of ministerial officers in the following cases: Anderson v. Russell, 64 S. D. 436, 268 N. W. 386; St. Charles State Bank v. Wingfield, 36 S. D. 493, 155 N. W. 776; State ex rel. Botkin v. Welsh, 61 S. D. 593, 251 N. W. 189; Deeters v. Clarke, 23 S. D. 298, 121 N. W. 788.

We are satisfied the order of March 19th, 1943, made by appellant, and hereinbefore adverted to, was void.

We find no prejudicial error in the record. The judgment and order appealed from are affirmed. No costs to be taxed in this court.

SMITH, P.J., SICKEL, J., and KNIGHT, Circuit Judge, concur.

WALL, Circuit Judge, concurs in result.

KNIGHT, BECK and WALL, Circuit Judges, sitting for POLLEY, ROBERTS, and RUDOLPH, Judges, disqualified.