# BLACKPIPE STATE BANK, Respondent v. GRASS, Appellant

## (105 N.W.2d 442)

(File No. 9817. Opinion filed October 21, 1960)

**Bangs, McCullen & Butler, H. F. Fellows,** Rapid City, for Defendant and Appellant.

**John W. Larson, M. Q. Sharpe,** Kennebec, **Frederick Cozad,** Martin, for Plaintiff and Respondent.

BIEGELMEIER, J.   On February 20, 1951 John Morsett owed the plaintiff bank $8,989.98 secured by a chattel mortgage on livestock, farm machinery and other personal property; the loan was past due and under secured; one bank officer described it as "static"; the State Banking Department had criticized the loan and told the bank to get it off the books. As a result of some conversations Morsett gave a bill of sale of all the mortgaged property to the defendant Grass, who then executed a note and chattel mortgage to the bank for $8,990; this mortgage listed verbatim Morsett's property as shown in the bill of sale and added 85 cattle owned by Grass. Morsett's notes were returned to him and the chattel mortgages securing them were released of record. Thereafter, as his notes came due, renewals were executed by defendant Grass, secured by chattel mortgages. This is an action on the last renewal note and mortgage. Whether Grass executed the notes and mortgages to accomodate Morsett or the bank is the issue; the trial court's findings include statements of the testimony and findings as to these transactions, with conclusions of law favorable to the bank. Defendant appeals from the judgment entered which was for foreclosure of the mortgage and a personal judgment against him.

■ Some general principles applicable may be stated. A person who is maker or indorser of commercial paper for the accommodation of another is not liable on it to him, whatever their apparent relation upon the paper may be and defendant Grass is not liable, therefore, to the bank if he executed these papers to accommodate the bank. Bank of Firesteel v. Buckmaster, 57 S.D. 445, 233 N.W. 285; First Trust Co. of Lincoln v. Anderson, 135 Neb. 397, 281 N.W. 796; 8 Am.Jur., Bills & Notes, § 465. Parol evidence is admissible to show who the accommodated party was. First National Bank of Vienna v. Engebretson, 28 S.D. 185, 132 N.W. 786. Generally as between the same parties a renewal note is subject to the same defenses that might have been made against the original note. The defense that the original note and mortgage was made for the accommodation of the plaintiff bank is therefore available in **this action.** Taylor v. Nissen, 58 S D. 299, 235 N.W. 703.

■ It was the first impression of the writer, to whom this appeal was assigned, that the oral testimony of the witnesses did not sustain the findings of the trial court that defendant was an accommodation maker for Grass; an analysis of the questions and answers so indicated. This was based on the premise that the trial court was in error in admitting plaintiff's Exhibit 1 in evidence: that premise still obtains. However, the trial court did admit it and appellant has not assigned this as error. Without an assignment of error the question of admissibility is not before this court. SDC 1960 Supp. 33.0735; In re Annexing Territory to School Dist. No. 28, in Yankton County, 50 S. D. 226, 209 N.W. 343; Patrick v. Blake, 70 S.D. 494, 19 N.W.2d 220. A similar result has been reached by other courts. Malaga School District No. 115 of Chelan County v. Kinkade, 47 Wash.2d 516, 288 P.2d 467; Arnette v. Arnette, 162 Kan. 677, 178 P.2d 1019. The evidence must be considered as if it came in without objecton. Myers v. Karchmer, Mo., 313 S. W.2d 697, 708.

■ Exhibit 1 was introduced in evidence through the testimony of O. A. Hodson, president of plaintiff bank.

He was asked if in preparation of this case he had g o n e through the bank records and worked up the written statement Exhibit 1, that if sworn as a witness and asked by questions and answers if all the things thereon would be the truth. He answered they were the truth. The exhibit contained seven numbered paragraphs and after referring to some preliminary conversations included the following statements:

"On February 20, 1951, both Morsett and Grass came to the bank. A lengthy discussion was held with O. A. Hodson, in his office. * * * Grass offered to 'Go' Morsetts note for him. * * * O. A. Hodson and Cashier B. B. Hodson privately discussed this aspect. * * * However they decided that to meet the wishes of the directors the Morsett name would have to be removed **for** the pouch entirely. * * * The follow-up was that Grass still wished to help Morsett, and agree to take over the loan himself. * * * Grass stated at this time that he was sure that the deal would work out. * * * Grass stated that **we** would rather do what he could to retain Morsett as a neighbor than to have some one else come in there and take over Morsett's land. * * * Which would happen of course, if the bank closed Morsett out.

"The transaction was completed by making a new note and mortgage from Grass to the bank, listing most of Grass' livestock, as well as the remaining livestock and machinery items which Morsett had previously Bill-of-saled to Grass. * * * This new note for $8990.00 and mortgage, was made for 8 months at 6% and credited to the personal checking account of Floyd A Grass * * * Floyd A Grass then made a personal check to the bank for $8989.98 to pay the sum total due at that time for Morsetts notes and interest to date. * * * Mr. Grass was handed the paid notes of Morsett, the bill-of-sale which had been made and a copy of

the figures about the transaction. * * * Mr. Grass then took the Bill-of-sale to the court house and filed same. * * * The following day the Grass mortgage and the Morsett releases were also filed."

Other evidence both corroborates and conflicts with the excerpt set out above; it came from the parties involved and interested in the transaction. The question of weight of the evidence and credibility of witnesses was for the trial court and where there is a conflict of evidence and no clear preponderance thereof against the findings of fact, they will not be disturbed. Johnson v. Mier, 76 S.D. 109, 73 N.W. 2d 342. The trial court's findings were that the agreement was "for the purpose of assisting the said John Morsett * * * and the Defendant Grass would continue as the sole party responsible for all of the said indebtedness * * * (defendant) was willing to execute the papers to help Morsett * * * that Morsett was the only one for whom he (defendant) would have done this * * * That the transaction was found to be one in which the loan of credit or the taking of responsibility * * * for the Morsett indebtedness was done primarily for the benefit of Morsett and * * * the case of one person agreeing to take over the obligation of another * * *". The court concluded from these findings and the fact the bank had released Morsett from his debt and mortgage that defendant was liable on the note and mortgage sued upon. There being no clear preponderance against the findings they cannot be disturbed. As so found the conclusion of the trial court brings this action within the purview of the Engebretson case. First National Bank of Vienna v. Engebretson, 28 S.D. 185, 132 N.W. 786.

█ It is claimed the trial court erred in admitting evidence of subsequent loan transactions involving Morsett, the defendant Grass and plaintiff bank. Defendant recognizes the rule announced in State ex rel. Smith v. Miers, 49 S.D. 96, 206 N.W. 236, that in trials to the court, the admission of evidence not competent or admissible will be presumed to be without prejudice unless the contrary affirmatively appears. He states the rule is subject

to the exception stated in 3 Am.Jur., Appeal and Error, §
940, that this presumption loses its force when it reason-
ably appears from the record that the incompetent testi-
mony did influence in some degree the action of the trial
court in rendering the particular judgment. Defendant
argues that it did influence the trial court because he re-
ferred to them in his memorandum decision and in Find-
ings of Fact XII and XVIII. The record shows that the two
transactions complained of were referred to in the tran-
script of adverse examinations had before the trial. This
transcript was admitted in evidence at the trial subject to
a general objection as to these items; it was stated the court
could sift them out. All the transactions between the bank,
Morsett and defendant, including the two objectionable
ones in considerable detail which support these findings, are
shown in the seven-page Exhibit "A". It was identified by
the president of plaintiff bank and introduced in evidence
by **defendant** as part of the cross-examination. Defendant
cannot complain of evidence which he caused to be placed
in the record. Baskerville v. Gaar, Scott & Co., 15 S.D. 211,
88 N.W. 103.

The judgment appealed from is affirmed.

All the Judges concur.