Geraldine RIDINGS, Libelant-Appellee,

v.

The MOTOR VESSEL "EFFORT," her engines, etc., Respondent,

M. V. Effort, Inc., Claimant-Appellant.

No. 83, Docket 31289.

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1967.

Decided Jan. 3, 1968.

Stephen M. Humsjo, Freeport, N. Y., for appellant.

Harry D. Graham, New York City, for appellee.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal from an interlocutory decree in admiralty of the United States District Court for the Eastern District of New York, George Rosling, J., ordering the sale of the motor-vessel "Effort." The decree was entered in an action

brought by libelant[1] Geraldine C. Ridings to foreclose a mortgage on the vessel. 46 U.S.C. § 911 et seq. The case comes to this court on a confusing record after a trial which the judge described as "fairly long and immeasurably complicated." For reasons given below, we reverse and remand.

As best we can make out, the relevant facts are as follows: The "Effort" is a "head-boat," taking passengers at a price per head for a day's trip to nearby fishing waters; when not at sea, the vessel is berthed at Sheepshead Bay in Brooklyn. In 1963, the boat was owned by Ida Wrege, who transferred it in that year to M. V. Effort, Inc., a New York corporation. In return, she received one hundred shares of the Corporation's stock, which constituted all of its outstanding shares. William Ridings, a New York City police detective, became interested in purchasing the boat. Mrs. Wrege's son-in-law, Charles Vandervoort, also wanted to buy the boat but was financially unable to do so alone. After some negotiation, a business deal was made. Mrs. Wrege disposed of her corporate shares as follows: fifty to her son-in-law Charles Vandervoort and fifty to William Ridings's wife Geraldine. In return, Mrs. Wrege received $30,000 and the assumption of certain liabilities. Of this sum, $10,000 was provided by Mr. and Mrs. Ridings; the other $20,000 was financed by the Security National Bank of Long Island. The precise mechanics used were complicated, marked by intermingled signatures and guarantees by Mr. and Mrs. Vandervoort, Mr. and Mrs. Ridings, and the Corporation. However, the trial court regarded the transaction as essentially a loan by the Bank to Charles Vandervoort and Mrs. Ridings, upon which each was evidently jointly and severally liable. In addition to various notes, the Bank also received from the Corporation a mortgage on the vessel as security. It is that mortgage which is the subject of the action to foreclose.

This arrangement was consummated in March 1964. For a while, Charles Vandervoort acted as captain of the boat.[2] However, he became seriously ill in October 1964, and from that time until his death in January 1965 stopped active participation in the Corporation's affairs; meanwhile, Mr. and Mrs. Ridings took over complete management and control of the Corporation and the vessel. During the entire period from May 1964, when the first installment on the obligation to the Bank was due, through October 1964, the installments were paid each month, apparently out of the earnings of the vessel. On November 10, 1964, while Mr. and Mrs. Ridings were in complete control and Charles Vandervoort was ill, Geraldine Ridings "purchased the Bank's position as creditor vis-a-vis all parties" for $17,580.75 and received an assignment of "all the instruments." The source of the funds used by Mrs. Ridings is in dispute, and the trial court made no finding concerning it. The Corporation argues that the funds may be corporate funds diverted by Mrs. Ridings; she claims that the bulk of the money came from an unsecured and unevidenced cash loan to Mr. Ridings by a neighborhood dentist, an assertion which left the trial judge "gasping with disbelief." A "scant" two days after the papers had been delivered to her by the Bank, Mrs. Ridings informed the Vandervoorts and the Corporation (at the Vandervoort home address) that the installment of $663.60 due on November 10, 1964, was overdue; she demanded immediate payment of the entire balance of the note, invoking the note's acceleration clause. No payment was made thereafter, and Mr. and Mrs. Ridings continued to operate and control the vessel.

---

1. This action was commenced before the unification of the civil and admiralty rules. The parties and the trial judge used the pre-merger terminology; we do the same.

2. Occasionally Mr. Ridings acted as captain when his police duties permitted.

Finally, in February 1966, Mrs. Ridings instituted this libel to foreclose the mortgage upon the vessel and for related relief, pursuant to the Ship Mortgage Act, 46 U.S.C. § 911 et seq. Mrs. Vandervoort, whose husband had by that time passed away, at first improperly filed an appearance as the owner for the purpose of defending the action. On May 4, 1966, the Supreme Court of Nassau County appointed Mrs. Vandervoort temporary receiver of the Corporation; thereafter, she answered the libel as receiver. She also filed seven claims, styled "cross-libel-defenses" and "cross-libel-complaints" in which the Corporation sought a judgment that the mortgage and accompanying corporate note be declared paid as to the Corporation, the accommodating party, or held illegal under state law, and claimed damages due to seizure of the vessel and its improper operation.

On the basis of the record before him, which he apparently considered inadequate, Judge Rosling held that the mortgage was a valid preferred mortgage under the Act and that Mrs. Ridings owned it by assignment. The court ordered the clerk to issue a writ of *venditioni exponas* to the marshal for the sale of the vessel with the proceeds to be deposited with the court. The judge also ordered that, upon application, a special master would be appointed to pass upon the claims of all parties to the proceeds and left for later hearing and determination the major factual disputes between the parties, including the financial condition of the Corporation at various times, the dealings between the Corporation and Mrs. Ridings, the possible liability of Mrs. Ridings to the Corporation, the bona fides of the default on which the foreclosure was based, and whether Mrs. Ridings's position as assignee of the mortgage "is to be deemed in her own right, or as trustee ex maleficio or a constructive trustee in behalf of the Corporation." From this decree, the Corporation appeals. Although she filed no cross appeal, Mrs. Ridings apparently objects to the court's order of a complete accounting of all dealings between the parties on the ground that this would exceed the court's admiralty jurisdiction.

■ Appellant Corporation raises many objections to the decree of the trial court. The most serious question is whether, assuming that there was a default on the mortgage, Mrs. Ridings should be able to take advantage of it.[3] Appellant argues convincingly that Mrs. Ridings may not do so. First, appellant claims that the debt vis-a-vis the Corporation could not be enforced by Mrs. Ridings when she purchased it, since the Corporation had obligated itself only as an accommodation to Mrs. Ridings and Vandervoort. Second, appellant charges that the default was "contrived by the Ridings, and avoidable by action incumbent on them to be taken in good faith." Unquestionably, Mrs. Ridings, as an original co-obligor on the debt, and in control of the Corporation and simultaneously its chief creditor, was in a peculiar position. Appellant claims that Mr. and Mrs. Ridings diverted funds from the Corporation so that it could not pay the November 10 installment and, in any event, that they could easily have raised the necessary funds to meet the relatively small payment due.[4] The trial court did not determine whether Mr. and Mrs. Ridings caused the default from which they benefited, or what would be the legal effect if they had; these issues were deferred for later hearing and resolution. But in ordering the sale without determining these key questions, the

3. Appellant also claims that the court failed to find that a default had occurred, which would, of course, be a prerequisite to judicial enforcement of the claimed lien by sale.

4. As the district judge put it:
 The ease with which William [Ridings] was able to borrow the large sum of $18,000 without security * * * to buy the entire mortgage suggests that the deficit financing of the lesser sums required might not have been impossible.

trial court put the cart before the horse. We understand the exigencies which the judge had in mind, but this extraordinary course was not justified. Before ordering the boat to be sold, he should have decided unequivocally whether Mrs. Ridings was entitled to take advantage of the claimed default by the Corporation.

Therefore, were this the sole issue on appeal, a remand for further findings would be in order. However, appellant's first argument is even more lethal. Ordinarily, an accommodated party cannot assert an accommodation note or endorsement against the accommodation party.[5] The Uniform Commercial Code § 3–415(5) specifically provides that "An accommodation party is not liable to the party accommodated * * *." The same proposition is well established under common law and the cases interpreting that section of the Uniform Negotiable Instruments Law which deals generally with the liability of accommodation parties.[6] The proposition is clearly the result warranted by equity and policy considerations. Carr v. Wainwright, 43 F.2d 507 (3d Cir. 1930); Colamatteo v. Schenkenberger, 163 F.Supp. 693 (E.D. Wis.1958); Kennedy v. Heyman, 183 App.Div. 421, 170 N.Y.S. 828 (1st Dep't 1918); Corn Exchange Nat'l Bank & Trust Co. v. Burkhart, 401 Pa. 535, 165 A.2d 612 (1960); Town & Country Shoes Federal Credit Union v. Cramer, 350 S.W.2d 281 (Mo., Kansas City Ct. of App.1961). Thus, if Mrs. Ridings was a party accommodated by the Corporation, she cannot foreclose the mortgage against the Corporation. Willis v. Sponsler, 117 Neb. 1, 219 N.W. 581 (1928); see Blackpipe State Bank v. Grass, 78 S.D. 551, 105 N.W.2d 442, 443 (1960); cf. Citizens' Nat'l Bank of Winterset v. Rowe, 214 Iowa 715, 243 N.W. 363 (1932); 4 American Law of Property § 16.69, at 130 (1952).

It is quite clear from the record that the trial court viewed the complicated transaction as an accommodation to Mrs. Ridings and Vandervoort by the Corporation. Thus, it said:

> The Corporation itself received nothing for its execution of the instruments * * * delivered to the Bank for its further security.
>
> The transaction was so clearly a loan to Charles [Vandervoort] and Geraldine [Mrs. Ridings] that we do not require for corroboration the testimony, although it was given, by the Bank's Mr. Ribando that the transaction was negotiated and the Bank's commitment to make the advance was given with such intent.
>
> It is indisputable that the Corporation signed as an accommodation for the individual borrowers * * *.

However, the closest that the court below came to considering the Corporation's claim that Mrs. Ridings could not foreclose because she was an accommodation party,[7] was its statement that:

> While it is true that the Bank in the initial transaction considered it was making a loan directly to Charles and Geraldine and looked to the other obligors merely for further security, yet Charles and Geraldine inter se intended unmistakably to have the Corporation's income and assets provide the source of funds for the mortgage payments. The monthly installments had in fact been paid from the corporate account through October 10, 1964. (See as to keeping mortgage alive notwithstanding payment by the obligor, 59 C.J.S. Mortgages, § 453–b; 36 Am. Jur. Mortgages, § 407.)
>
> If Geraldine had merely purchased the outstanding obligation against her solvent—(in a bankruptcy balance sheet sense)—Corporation even at a discount, the law would not deny her

---

5. On this issue, we need not decide whether New York or federal law is applicable in a case under the Ship Mortgage Act, see Gilmore & Black, Admiralty § 9–57 (1957), since we see no indication that New York law and general law differ.

6. Uniform Negotiable Instruments Act § 29.

7. First cross-libel and defense.

her bargain, notwithstanding her status as 50% stockholder as well as director and president. [Footnote omitted.]

But this does not answer the Corporation's argument that the accommodated party could not foreclose against its accommodator. The quoted language refers to two other doctrines. One deals with situations in which the payment of a mortgage note will not be considered a discharge of the obligation and the security, depending on the intention of the parties. Imar Mortg. Corp. v. Ticoli Realty Corp., 232 App.Div. 635, 251 N.Y.S. 71 (1st Dep't), aff'd, 257 N.Y. 594, 178 N.E. 809 (1931). The intention referred to is usually the intention of the party making payment, who may want to take an assignment of the instruments for his protection. United States v. Boston and Berlin Transp. Co., 237 F.Supp. 1004 (D.N.H.1964). The doctrine is basically equitable in nature—it prevents a merger at law "where justice so requires." Id. at 1008; cf. In re Kahn's Estate, 45 N.Y.S.2d 768 (Surr.Ct.1944).[8] The other reference is to the line of cases that allows a corporate fiduciary the benefit of his bargain when he purchases an outstanding obligation against his corporation. See, e. g., In re Calton Crescent, Inc., 173 F.2d 944, 13 A.L.R.2d 1160 (2d Cir.), aff'd sub nom. Manufacturers Trust Co. v. Becker, 338 U.S. 304, 70 S.Ct. 127, 94 L.Ed. 107 (1949). But the issue still remains whether Mrs. Ridings can assert against the corporation this particular obligation, if it was originally undertaken as an accommodation for her benefit as a primary obligor. Based upon the court's key finding that this is exactly what occurred, Mrs. Ridings cannot enforce the note against the Corporation or foreclose the mortgage. We conclude that the court below should have dismissed the libel and erred in ordering the vessel to be sold.

 The record indicates that the vessel has already been sold by the marshal for $22,500, although the Corporation claims that Mr. Ridings was the purchaser "in fact." The court below ordered the sale pursuant to a writ of *venditioni exponas;* after the return of such a writ, the sale has to be confirmed before it is final. Until confirmation, a bidder is not a purchaser but merely an offeror to the court, which accepts his bid by the confirming order. The East Hampton, 48 F.2d 542 (2d Cir. 1931); 3 Benedict, Admiralty § 448 (6th ed. Knauth 1940). Refusal to confirm the sale, while unusual, is justified here because of the error of the district court in ordering the sale in the first place. Since we do not know whether confirmation has occurred, we must deal with all possibilities. If the Ridings family is still the true owner and operator of the vessel, confirmation will not matter because the district court should pierce the purchaser's corporate veil, if there is one, and require an accounting for the period since the sale. However, if a bona fide third party has purchased the vessel, an already completed confirmation of the sale allows him to keep the vessel; otherwise, it must be returned to the Corporation under proper conditions and adjustments. See The East Hampton, 48 F.2d at 545. In any event, it would not be appropriate for the district court to continue with the extensive further proceedings contemplated by its order of reference. In view of the inability of Mrs. Ridings to foreclose the mortgage against the Corporation, it is not necessary as between these parties to resolve the Corporation's other legal attacks on the mortgage. Moreover, the other claims in the Corporation's cross-libels do not appear to be within the

---

8. It is questionable whether a merger doctrine would apply on these facts since ordinarily it requires that the interests of the parties must be co-extensive. Mintz v. Kupferstein, 14 Misc.2d 1034, 177 N.Y.S.2d 652 (Sup.Ct.Nassau Co. 1958); Wallach v. Wallach, 107 N.Y.S.2d 255 (Columbia Co.Ct.1951). This might not be so here, since Mrs. Ridings is a co-obligor on the underlying debt and the sole owner of the corporate note and mortgage.

district court's admiralty jurisdiction, once the libel is dismissed because the mortgage is unenforceable by Mrs. Ridings against the Corporation. W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, 155 F.2d 321 (2d Cir.), cert. denied, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635 (1946). We note that most, if not all, of these claims appear to be raised in the state court suit brought by Mrs. Vandervoort after Mrs. Ridings began this litigation in the federal court.[9]

The decree of the court below is reversed and the case remanded for dismissal of the libel and cross-libels, subject to whatever limited accounting or proceedings may be necessary consistent with this opinion.

9. Gloria Vandervoort, as Administratrix of the Estate of Charles E. Vandervoort, Deceased, a stockholder of the Corporation M. V. Effort, Inc., on behalf of the Estate of Charles E. Vandervoort, and all other stockholders of the Corporation v. M. V. Effort, Inc., et al., Index No. 2283/1966, Supreme Court, Nassau Co., Complaint filed March 21, 1966.